Good morning. May it please the Court, Jordan Cavill, Hooper, Lundy, and Bookman for Plaintiff and Appellant, Kaiser Foundation Hospital, Anaheim. As a preface to my comments, I just want to make a quick note about the terminology I'll be using. The plaintiff and appellant in this case is an individual, Kaiser Facility, Kaiser Foundation Hospital, Anaheim. I'll also be referring to the Kaiser organization, which owns and operates Anaheim more generally. So when it's just Anaheim, it will be Anaheim, and when it's Kaiser more broadly, it will be Kaiser. Got it. Can you help me out? Why didn't Kaiser transfer this to a group appeal as opposed to an individual appeal? Or tell me how that could and should have taken place. Yes, I was certainly going to address that. We recognize that in the briefing it isn't really explained in detail what the error actually was here, so I thank you for the opportunity to explain that. Starting in about 2005, this same issue, which relates to a special kind of Medicare supplemental reimbursement called graduate medical education. I'm going to have to cut to the chase. Tell me. Okay. We were getting, our firm, Hooper-Lonnie Bookman, was handling these cases for Kaiser. This issue is not unique to Anaheim, but spans the whole Kaiser California hospital chain. So we were continually getting these appeals on this specific issue on a rolling basis starting several years ago, and they were coming in regularly because hospitals get their notices of reimbursement at different times. So we developed this system because we had, there was such a high volume of cases where we would get the appeal, we would set up a notice. An attorney in our firm was responsible for taking down the deadlines, monitoring the due dates, and transferring. So was it scheduled for a group appeal or for an individual appeal? I think that's the question. Well, it was, as all these cases are, it starts out as an individual appeal. Okay. Then once there's enough facilities to form a group, a group is formed. The individual appeal is transferred into the group. So wasn't a group already formed? Yes, in this instance. So why wasn't it just added to the group that was already formed? For whatever reason, and we're not sure how this happened exactly, we got the acknowledgment and due dates letter from the board. It just went in the file. It didn't get on the calendar of the person who was responsible for doing the transfer letter, and it just didn't happen. Who can make a move to the group appeal? Does the hospital do it? Somebody on their own in the court? Well, it sort of depends. It could be the facility. But once they appoint a legal representative, as we were in this case, then it's up to the representative to file what is essentially a paragraph letter asking that the case be moved over. Why wasn't it done once there was a dismissal here? As opposed to filing the final position paper, why not also request a transfer to the group appeal? That is an excellent question. Had we had an opportunity to do it over again, that's what we would have done. But the typical procedure for a dismissed case is explain why the deadline was missed and then provide what you missed. What was the explanation for why the deadline was missed, by the way? Again, it's just because the attorney responsible for monitoring the deadlines, for whatever reason, and we're still not sure why this deadline didn't get on her calendar, so no one was aware of it and we missed it. If it had been transferred to the group appeal, would it have been timely? Well, there is no deadline. There's no timing requirements on when something could get transferred for a group. That was a viable option. Absolutely. And if you look at the record, that happened with respect to over 80 individual Kaiser cases and 13 group appeals. This is a lone aberration where something went wrong in the system. But for the most part, Kaiser and our firm's track record of compliance in this context is really, really excellent. I understand. Has the group appeal been resolved? Yes, it has. About a month ago, the PRRB issued a decision that was favorable to the providers. So it's too late now to join the group appeal? No, we preserved our rights all along, and if this gets reinstated, we can get relief through that group appeal. I mean, but if it's not reinstated as an individual appeal, it's too late for you to go on the group appeal. Is that right? No. The way that we've set things up with the board, if it's reinstated as an individual appeal. That was my question. If it's not reinstated. Yes, it can still be transferred into the group appeal. So why are we here? Because since the individual appeal was dismissed, unless that dismissal is reversed, the board will not acknowledge it as part of that group appeal. That was my question. Okay. In other words, you have to win here in order to get it. Yes, that is true. Okay. Can you tell me what the purpose is of the preliminary position paper? What's it supposed to do in the process? Does anybody look at it before the final position paper? Theoretically, what was at the time of this case, the fiscal intermediary. One of the new rules. Right. It was supposed to look at it, and it was supposed to apprise them of the provider's position. But in all candor, as someone who practiced in the PRB field for many years, it's a pro forma document that really has very little purpose at all. Maybe the intermediary looks at it, maybe it doesn't. Intermediaries were supposed to file them as well and routinely did not. In this case in particular, where this issue had been litigated and briefed in multiple other cases, the fiscal intermediary was already well aware of what Kaiser's position was. What does the record show with respect to how the failure to file a preliminary position paper was routinely treated? Was it ignored? Were you slapped out? Was some other sanction imposed? Is there any kind of anything in the record about how that's treated? Well, there isn't anything extensive in the record because those kind of PRB decisions on dismissals and reinstatements of dismissed position papers, there's no real cataloging or compendium of those kind of decisions. It's more the substantive board decisions that are kept a record of. But what I can point you to is the commentary that accompanied the change in the PRB rules where they effectively acknowledged that under previous practice, the PRB, the preliminary position paper requirement wasn't that extensive. They made it optional going forward. They acknowledged and- Yes, but during the time, you had experience. I guess I'm going to take your question a little outside the record. What was your experience with how they treated? You knew the rule said if you don't file it, you will be dismissed. Yes. So that didn't come as a surprise to you when that happened. No, it did not. And I can tell you based on my own experience that normally they adhere to that and if preliminary position paper deadlines were missed, the cases were dismissed. However, they always had this reinstatement power and used it in some instances. You know, without any supporting documentation, I can tell you that sometimes the excuses they accepted for reinstatement were better than ours, and sometimes they weren't. You're just at the mercy of the board at that point. Yes. And that's part of the reason that in this particular case, we don't agree with the district court and the secretary's position that a favorable ruling here will somehow increase the amount of litigation on these missed deadlines that's already in existence. The board retains this power to reinstate dismissed cases without any standard. It just says they can do it if they want to, basically. As you'll see from the briefing, there's already at least three published decisions on these same kind of deadlines. So these cases are going to go forward irrespective of what ultimately the result of this case is, as long as In this case, we have to decide whether or not the board was arbitrary and capricious. I think whichever way the board went, you know, Agreed. And we believe that is the case, because in effect, the only thing that happened here Isn't your better argument this was an abuse of discretion? Yes. And that is our argument, that in effect, all that was accomplished here was a vindication of the board's own rule. The secretary, as he has How is that an abuse of discretion to enforce your own rule? Because it was purely punitive. And it has to be consistent with the statutory grant. And the statute, 42 U.S.C. 1395-00, says that the board can adopt procedures to manage its caseload, But they have to be consistent with the overall purpose and reasonable and necessary to carry that out. And here, nothing was accomplished. This individual case, if it went forward, would not have added any additional burden to the board. It would have been transferred into an already existing group appeal that went forward anyway. The briefing would have all taken place in the context of the group appeal. There wouldn't have been a hearing on this. It just would have become a name on a list of a case that went forward anyway. That would have been concluded by now. Yes, exactly. So, in effect, the PRB created more work for itself because the provider was potentially deprived of the opportunity to prove it. But if you look at the broader purpose to enforce these rules and to make sure that the cases proceed without having to make all these determinations about whether they should reinstate or dismiss the appeal, then it's not arbitrary. But they're doing that anyway. They have the board's rules and they continue to, as they were then and as they are now, they continue to say you can seek reinstatement if your case is dismissed. So that's going to happen anyway. What attorney in his right mind is going to take a chance on trying to get an appeal reinstated by failing to adhere to the timelines, you know, if the board is strictly enforcing those? They are not. But the point is, and I think this is a good segue into the analogy with court proceedings and the use of the excusable neglect standard there, sometimes mistakes happen. And as much as we may try to guard against them, it does happen. And when substantive rights are at stake and you potentially can forfeit tens, even hundreds of thousands of dollars for one missed deadline, that's why courts apply this equitable standard that takes into account a variety of circumstances, including impact on the proceedings, prejudice to the other parties, et cetera. And when you take the weight of those factors in this case, the punishment that was doled out here does not fit the crime at all. I sympathize with where you are. The problem is, is the excusable neglect standard has not been applied in the administrative context. I feel your pain. Trust me. I agree with you for the most part, but there is the end of a case out of the Fourth District where they did apply that standard. And I will say that they stopped short of going to the full extent that they should have because they used the term excusable neglect, but what it boiled down to in that case. They didn't apply the practice. Yeah. It was just do we like their excuse or not. We're saying that, particularly in the Ninth Circuit, it's been pretty clearly established that excusable neglect, when it's applied, is a broad equitable standard that takes into account a variety of factors. We don't see any reason when we're talking about an abuse of discretion to begin with, which is somewhat of an equitable standard, that that same analysis should apply in this context. We don't think it's a stretch. I know the district court did. We think it's natural. I mean, the end of a court in adopting that standard borrowed it from court proceedings and didn't say, okay, we're going to take that standard but make it a little different here because this is an administrative proceeding. Well, it didn't even apply it, actually. Yes, I would agree. And they did that primarily, I think, to get past the jurisdictional issue, which I don't think is really an issue anyway. So unless we've totally disrupted your organized argument, is there anything else you want to add? The last thing that I'll mention is that the Secretary's brief repeatedly makes the assertion that the deadline was missed due to ignorance of the rules or failing to read or comprehend it. And that, I've already explained, is not the case. And I think in addition to what I've said, the record as to the fact that in 80 cases, we either transferred it on time or filed the position paper timely, suggests that we are fully aware of the rule. We do honor the rule generally. So there's no support for that assertion. It was just a mistake. And, again, given the totality of the circumstances here, it's one that the Board abused its discretion by not allowing this to go forward. Is there any significance to the judge's comment that this was made by experienced counsel in these matters? Is there a different standard for experienced counsel versus inexperienced counsel? Well, I would point to that as a flaw with the PRB's approach to this generally. Again, there's no standard for reinstatement. It's just what they feel is appropriate. I don't think there should be any difference between whether the counsel is experienced or not. But in this case, it does look like Kaiser was penalized because they felt like we, as their counsel, should have known better. And when you're talking about applying what should be the same standard differently depending on who the party is, I think that adds to the overall arbitrariness of what's going on before the Board with respect to these kind of defects. Thank you. So I'll reserve some time for further comment. All right. Good morning, Your Honor. Russell Chittenden on behalf of the Appalese Secretary of HHS. Good morning. So there's no impact on the case. There's no prejudice to any party. Come on. Your Honor, the cases that have looked at this and have addressed that argument, including the high country case, have pointed to the fact that the PRB has a caseload of about 11,000 cases a year. They have to do things in a streamlined fashion. They are able to do things in a streamlined fashion in part because, as counsel concedes, they're experienced people. I have no problem with someone strictly enforcing the rules, but here it appears that they sometimes enforce this missed deadline and sometimes they don't. And in this case, looking at these facts, can you tell me that it made sense to enforce the deadline? I think it did, Your Honor. Because? Well, number one. You got a final position paper earlier than you otherwise would have. Right. The reason it made sense is, among other things, there is a getting back to the group appeal and the fact that this is a commonly owned hospital with others that are involved in pursuing these same claims. In a group appeal, it's not optional, actually. The CFR provides that when providers are under common ownership or control, they must bring a group appeal on any issue common to the providers and so forth. So they had to do that. It wasn't their option. They apparently were going to do it. They just didn't. They had two chances here. They could have done that, which would have mooted the entire thing, or they could have filed their preliminary position paper, which they say was pretty much ready to go. Well, does the rule say you can't file the group appeal if you've already filed a preliminary position paper? I have no, I do not know, I do not believe so. There's no deadline for filing the transfer to a group appeal, I take it. I do not believe there is. But on the other hand, you must do it. So that would indicate to me that you probably should do it very quickly. As soon as you, you know, as soon as you file your individual case, you could probably presumably file with that a transfer to the group appeal. That would be the, would seem to me the logical way to do it. I sort of look at this like the Rule 16 filings that attorneys have to do. And sometimes the judges look at them, and sometimes they don't. But if you don't file it, you know, your case can be dismissed. And I kind of look at this as the same way. You can't really judge what anyone, no pun intended, of what someone does with the filing. But the issue is whether or not the rule was complied with. And so. Your Honor, I would agree. And not only whether the rule was complied with. In this case, it's more than a rule. It's a specific letter to the provider saying these are the deadlines. You don't have to calculate it. We'll tell you February 1. And it says in that same letter, which is a very short letter, if you don't do it by February 1, we will dismiss your case. No one's denying it. Your opponent's not denying that's there. But the next issue is what's the impact? Understanding rules are meant to make the docket move smoothly. What was the impact on this case, on this docket? What's the prejudice to this? And while you're thinking about that answer again, tell me what's the standard of review we should be using here? Do you agree it's excusable neglect or abusive discretion or something else? What is your position on our standard of review? Under the APA, arbitrary and capricious. I don't think you get to excusable neglect. I certainly don't think you get to excusable neglect in the way it's applied in civil arenas, such as under Rule 60. Why not? Well, because here we're not talking about a citizen's right in court to pursue their claim. What we're talking about is the right of a large entity, corporate entity. A corporate citizen. Exactly. We won't get into that ruling. But who has decided to enter in an arrangement, a financial arrangement, with the government to provide government services under the Medicare Act. Their rights, we think, administratively are quite adequate, but I think they can't stand on par with a citizen who's being denied his day in court due to excusable neglect. As a legal matter, as a practical matter here, counsel has already acknowledged the great experience that they have in this arena. The PRRB is a specialized tribunal, and the people that generally appear before the PRRB are familiar with the rules and are repeat players. So you believe experienced counsel should be held to a higher standard then? I don't know that you can say it that way, but I think as a practical matter in reaching a decision, I don't know how you don't take that into consideration. I guess I could put it that way. So is there anything in the record that talks about the percentage of times that dismissals have been reinstated, the reasons for those reinstatements? Do we have anything in the record regarding that? I don't believe we do. I do note that the appellant's brief talks at least three or four times about the PRRB's practice, the PRRB's practice of dismissing appeals when the preliminary position paper is not filed. They are fully aware of that practice, and that seems to be ‑‑ We're not disputing that practice. Sometimes they grant them, sometimes they don't. Right, but the practice is they get dismissed, and that after that there may be less evidence in the record one way or another. We don't know what reasons were given and what reasons were accepted and what reasons were rejected. The record doesn't tell us any of that. You're correct, Your Honor, but I'm not sure that a tribunal has to ‑‑ Well, in this case, under the arbitrary and capricious standard, I think they gave sufficient reasons. There's not a body of law. I'm talking about for other cases. Is there anything in the record that we can compare it to to determine if it's arbitrary and capricious? I would think that the appellant would have great motivation if it knew of cases that it could contrast in terms of its outcome to bring those cases forward and place them in the record, and I haven't seen that. What we do know from the record is that intermediaries often miss the preliminary position paper deadline. That's an allegation they make in their papers. I don't know that it's anything more than that. I don't think the PRRB would agree with that, and there are sanctions that are imposed when anybody misses a preliminary position paper, including providers. They obviously can't have their appeal dismissed because they're not pursuing an appeal, but they are sanctioned in the process. Tell me your view on the comment made by your opponent in his brief and again here today that there have been changes in the procedural rules that now disfavor or at least appear to disfavor the use of preliminary position papers, and while those rules were not in effect at the time, isn't the reasoning behind those rules something we ought to consider? I think it's quite possible, but it would not change the result here, because whether a position paper is filed or whether what is called a joint scheduling order is filed, one of those two things has to be filed by the date that the provider is given. And the joint scheduling order includes a discussion of legal positions, material facts, everything that would be in a preliminary position paper. So it's a bit of a sleight of hand, I think, to say that those types of things, those types of disclosures are no longer required. They are just in a different form and probably in a more elaborate form than a position paper or the preliminary position paper. I'm going to try this again. What's the harm in this case for the failure to file the position paper, especially in light of the fact that a final position paper was filed with the request to reinstate? Your Honor, one of the harms, again, going to the PRRB's caseload, is that if word gets out, so to speak, nobody's going to do it. Maybe they'll all start filing their final position papers earlier now. Well, maybe, but, you know, I think what the PRRB would rather have is people go by its rules. So your answer is, and I'm sorry to interrupt you, but your answer is, I take it, the general concept that you need to enforce the rules so people don't get sloppy as opposed to any particular harm to this case. There are a number of reasons that preliminary position papers are required, including they provide for an interplay between the provider and the intermediary. The preliminary position paper goes to the intermediary. It oftentimes, in the experience of these cases, leads to settlement. Whatever its purpose was, it was apparently not something important enough for the rules to continue to require them in any event. Well, they are still required in or either a preliminary position paper or a joint scheduling order, which includes everything a preliminary position paper does and a little more, because it then, you know, requires certain joint statements about the nature of the case. But to get to the Court's concern, preliminary position papers that go to the intermediary oftentimes, in the experience in these matters, leads to a resolution of the case before the PRRB has to do it. But in this case, it would have just gone to a group appeal, correct? Yes, but that begs the question of why they didn't do that in the first place and save the PRRB and the intermediary extra effort. So the harm to the system is it bogged the system down because it didn't put the preliminary paper in so that the process could start earlier. Yes, yes. There are a number of harms. I mean, it's hard to really to look behind the way a tribunal conducts itself and attempt to explain the harm if those rules aren't followed. For example, opening briefs. Why do we need them? The real good stuff is in the reply, you know? But when you get a letter from this Court saying your opening brief is due on a certain day, you don't think, well, I don't know, in this case it may not be that important. You do it. And if you don't, you might find yourself in trouble. Okay. And finally, I would just say that the appellant has been candid in saying, for example, in its presentation below, the provider does not have a particularly strong reason for missing the deadline. And I guess one of the problems I have with the presentation here is that rather than the providers on conduct being at issue, it's the system somehow that's at issue. So there's not a lot of contrition here I see in terms of missing the deadline. There's a lot of talk about why the deadline really is make work is one phrase that's used, and simply not shouldn't be there. And I think that in this case rather than. Read with me. We all have deadlines, right? Even cases in our courts have deadlines. Some are more important than others, right? A trial date is more important than another date in a case schedule, for example. So there is a difference in the importance of certain dates. Not every date is equally important. That's true. But to dissuade that feeling from the providers, I think the letter is sent that says, if you miss this preliminary position paper deadline, your case will be dismissed. I don't know. End of discussion. End of story. We need to inquire no further. You're out of here. Goodbye. Well, yes. I mean, you know, you have to. Why even bother with request to reinstate? Just that's the end of it. Well, apparently they are. At times they may do it. I'm not so sure, though, you know, given the facts of this case and given what the way the appellant has described the process that happened, and it wasn't really elaborately disclosed until some of what I heard today, what really happened here. It doesn't make for a good, I don't think a good reason if the standard, and I don't think it should be, but if the standard were excusable neglect, I don't think it's been demonstrated. So I don't think under any standard, much less under arbitrary and capricious, does this case get reinstated. I would be happy to answer any questions the Court might have. It appears there are none. Thank you. Thank you. Rebuttal. Yes, Your Honor. Just a couple points. I think a lot of what counsel said was addressed in my opening arguments. But as to the other cases that have come before various courts and the Board's dismissals for misdemeanor area position paper deadlines have been affirmed, there are pretty significant differences between those cases and this one. The record doesn't show that. That's your brief, your experience as having done those cases. But we don't have, the record does not have anything regarding. I'm just referring to the Court decisions on the Board's dismissal-slash-reinstatement decisions. We mentioned the differences between final and preliminary position papers that's discussed at length in the briefing. I won't go over that. None of those cases involve these mandatory group appeals. So the dismissals of those cases had a much more direct impact on the Board's workload because those cases that were dismissed theoretically could have gone forward and had hearings and additional briefings. Again, our case, mandatory group appeals. But as opposing counsel points out, that was all in the control of your client. That had nothing to do with the way the Board processed the case. It was, you know, your client had full control of the circumstances of how this case was to be processed. Agreed. And, again, you know, 80 out of 81 times it happened correctly and the case was transferred this time there was a mistake. This is just a very high standard of review. Arbitrary and capricious is a very high standard of review for us to say that the administrative body was wrong. We can't put ourselves in the position of them and say if they had been us, we would have given you, I'm sure we all would have excused it. Understood. The record to support the fact that the judge was aware of the group appeal when he or she denied the reinstatement? Yes. The dismissal letter itself expressly acknowledges that this was a case that should have gone into a group appeal and they used that as a reason why this individual case should not go forward. And we just think that's completely backwards. The last thing that I want to address is counsel suggested that the excusable neglect standard should not apply here because these rights, these administrative appeal rights that we're talking about are not the same as court rights. I disagree with that. These are statutorily conferred appeal rights that apply to everybody, not just corporately operated hospitals, skilled nursing facilities, home health agencies that could be owned by, you know, mom and pop, whoever are also subject to the PRB proceedings. So these are not substantive rights that are somehow less in nature than rights to pursue a matter in court. So for that reason, I think the analogy with court proceedings and this excusable neglect standard makes sense. All right. Thank you, counsel. Thank you. Thank you to both counsel for your argument in this interesting case. The case that's argued is submitted for decision by the court. The next case on calendar for argument is United States v. Nathanson.
judges: Zouhary, Goodwin, Rawlinson